UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

MARIA ARENAS, )
 )
    Plaintiff, )
 )
v. )
 ) CV416-320
GEORGIA DEPARTMENT OF )
CORRECTIONS, *et al.*, )
 )
    Defendants. )

## ORDER

Defendants Georgia Department of Corrections (GDOC), Georgia Correctional Health Care (GCHC), Mark Shelby, Marvin Dickson, and Stanley Williams move to dismiss and to stay discovery in this prisoner civil rights action. Docs. 36 & 37. Defendants seek dismissal both for failure to state a claim and because, even if the claims pass Fed. R. Civ. P. 12(b)(6) muster, they are entitled to sovereign and qualified immunity against all claims. Doc. 36. Pending the outcome of the motion to dismiss, defendants have asked that discovery be stayed to "save both parties time and expense until it has been determined which legal issues will go forward, if any." Doc. 37 at 3. Plaintiff opposes. Doc. 41.

Plaintiff's son, Richard Tavara, committed suicide during his incarceration at Smith State Prison. Doc. 34 (Amended Complaint) at ¶ 14.[1] He suffered from several known mental impairments and had a history of suicide attempts. *Id.* at ¶¶ 15-18. On December 7, 2014, a prison officer saw Tavara beginning to hang himself (he had tied off one end of a bedsheet to a fire extinguisher sprinkler and was wrapping it around his neck), but despite being physically capable of intervening "stood back and watched." *Id.* at ¶¶ 19-21. He contacted his supervisors, who directed him to wait until they themselves came to Tavara's cell. *Id.* at ¶ 22. By the time the supervisors arrived and finally opened the cell door, however, Tavara had been hanging for several minutes and was unresponsive. *Id.* at ¶¶ 23-25. Emergency medical services were not called until more than 15 minutes after Tavara was first discovered. *Id.* Had either the first officer on the scene or his supervisors intervened sooner, Tavara would not have died. *Id.* at ¶ 27; *see also id.* at ¶¶ 27-30 (prison policy led to their nonintervention); *id.* at ¶¶ 31-34 (despite being a known suicide risk, Tavara was housed alone in a cell with a risky "tie off point" that enabled him to commit suicide).

---

[1] For the purpose of this Order, the Court will accept as true the facts lifted from the cited filings.

2

Arenas alleges that defendants Shelby, Dickson, and Williams were deliberately indifferent to her son's "clearly established right to be protected from his suicidal tendencies" and "maintained a policy and practice of prohibiting officers from intervening to save inmates' lives without the assistance of their supervisors . . . even if the delay would likely cost the inmate his life." Doc. 34 at ¶¶ 37, 40. She further alleges that by neither providing Tavarra with mental health treatment, nor recommending he be placed in safe housing, nor recommending he be housed with a roommate, defendants GDOC and GCHC violated the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA). *Id.* at ¶¶ 42-50. Finally, she alleges that GDOC and GCHC are liable under the Georgia Tort Claims Act (GTCA) for the individual defendants' "negligence and/or intentional misconduct in delaying necessary medical care and protection from harm for Tavara" under a theory of *respondeat superior*. *Id.* at ¶¶ 51-58; *see also id.* at ¶ 59 (alleging notice was timely served under the GTCA).

In their motion to dismiss, defendants argue, *inter alia*, that plaintiff has failed to adequately plead claims under the ADA, the RA, or 42 U.S.C. § 1983, and that, regardless, the individual defendants are

immune from all of plaintiff's federal and state claims. Doc. 36. Arenas contends that she has sufficiently alleged violations of the ADA, RA, and GTCA against GDOC and GCHC, and that immunity is *not* an available defense. Doc. 40. *See Sandoval v. Hagan*, 197 F.3d 484 (11th Cir. 1999), *overruled on other grounds Alexander v. Sandoval*, 532 U.S. 275, 493 & 500 (2001) (§ 2000d-7 manifested an "unmistakable intent to condition federal funds on a state's waiver of sovereign immunity," and a state waives its Eleventh Amendment immunity if it continued to receive federal funds after the provision was enacted), *cited in Garrett v. Univ. Ala. Bd. of Trustees*, 344 F.3d 1288, 1293 (11th Cir. 2003) ("Where Congress has unambiguously conditioned the receipt of federal funds on a waiver of immunity" as it did in 42 U.S.C. § 2000d-7,[2] *Sandoval* does not

---

[2] That statute provides that

> A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 [29 U.S.C. § 794], title IX of the Education Amendments of 1972 [20 U.S.C. § 1681 *et seq.*], the Age Discrimination Act of 1975 [42 U.S.C. § 6101 *et seq.*], title VI of the Civil Rights Act of 1964 [42 U.S.C. § 2000d *et seq.*], or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

42 U.S.C. § 2000d-7 (1986). The Rehabilitation Act prohibits discrimination against disabled individuals "under *any* program or activity receiving Federal financial assistance," 29 U.S.C. § 794(a) (emphasis added), and defines "program or activity" to include "all of the operations of . . . a department, agency, special purpose district, or other instrumentality of a State or of a local government." *Id.* at § 794(b)(1)(A).

Management of state prisons is a core state function. As the Supreme Court has

4

leave open the possibility that a state can continue to accept federal funds without waiving its immunity."); *United States v. Georgia*, 546 U.S. 151, 159 (2006) (the ADA also "validly abrogates state sovereign immunity," albeit to a lesser extent than the RA); *Georgia Forestry Comm'n v. Canady*, 632 S.E.2d 105, 109 (Ga. 2006) (purpose of 'law enforcement' exception to sovereign immunity waiver in GTCA is to protect state from claims involving only those "decisions made by state employees and officers with regard to the amount, type, and disbursement of equipment and personnel *in response* to a need for the immediate provision of police, law enforcement, or fire protection services). Thus, she argues, discovery must go forward. Doc. 41.

On preliminary review,[3] it appears that Plaintiff has sufficiently alleged enough facts to support claims under (at least) the RA and ADA. *See* doc. 34 at ¶¶ 7-8, 14-24, 27-28, 33, 42-50. In order to state an RA or

---

stated, "[i]t is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." *Preiser v. Rodriguez*, 411 U.S. 475, 491-92 (1973). Indeed, "maintenance of penal institutions is an essential part" of one of government's "primary functions" -- "the preservation of societal order through enforcement of the criminal law." *Procunier v. Martinez*, 416 U.S. 396, 412 (1974).

[3] "When a party seeks a stay pending resolution of a motion to dismiss, a court must take a preliminary peek at a dispositive motion to assess the likelihood that the motion will be granted." *Sams v. GA West Gate, LLC*, 2016 WL 3339764 at * 6 (S.D. Ga. June 10, 2016) (quotes and cites omitted).

ADA claim,[4] a plaintiff generally must prove that (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability. *See Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001) (citing 42 U.S.C. § 12132); *Haddad v. Arnold*, 784 F. Supp. 2d 1284 (M.D. Fla. 2010) (RA and ADA claims was "are analyzed similarly").

Defendants concede (for the purpose of their motion to dismiss) the first two prongs, but dispute that any denial of benefits was due to their "discriminatory intent." Doc. 36 at 6-7. But defendants rely on employment discrimination cases to prove their point; here, the denial of benefits is demonstrated by their "deliberate indifference" to the risk posed by Tavarra's well-known, documented mental health issues and history of suicide attempts (as demonstrated by housing him alone in a cell with a "tie off point" he could use to hang himself). Doc. 34 at ¶¶ 15-18, 31-34; *see Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334,

---

[4] "With the exception of its federal funding requirement, the RA uses the same standards as the ADA, and therefore, cases interpreting either are applicable and interchangeable." *Badillo v. Thorpe*, 158 F. App'x 208, 214 (11th Cir. 2005) (citing *Cash v. Smith*, 231 F.3d 1301, 1305 & n. 2 (11th Cir. 2000)).

344-48 (11th Cir. 2012) (RA "discriminatory intent" can be shown by "deliberate indifference"). That is enough, at this stage of the pleadings, to support an RA (and perhaps an ADA) claim. And, as discussed above, immunity is not a defense to the RA -- though it *may* be to an ADA claim. *See Garrett*, 344 F.3d at 1293 (RA); *Georgia*, 546 U.S. at 158-59 (ADA); *but see Redding v. Georgia*, 557 F. App'x 840, 844 (11th Cir. 2014) (though ADA generally abrogates state immunity, a prisoner's "conclusory allegations" that "discrimination could be inferred from the absence of legitimate penological reasons for his assignment . . . was not specific enough to survive a motion to dismiss" and so Eleventh Amendment immunity was an available defense to his ADA claims). Even assuming, however, that only Arenas' RA claim proceeds, it has the same factual underpinnings as her other claims (plaintiff must prove her son was disabled, that defendants knew it, and that they failed to reasonably accommodate that disability, leading to his otherwise preventable suicide), such that "[b]y conducting discovery on any claims, [Arenas] will conduct discovery of all claims." Doc. 41 at 3-4. Hence, it appears unlikely that the scope of discovery would change regardless of dismissal of some (or all) of Arenas' § 1983 claims against those individual

7

defendants immune from suit, as long as (at minimum) her RA claim remains alive.

At least one (and probably more[5]) of Arenas' claims, therefore, appear more than likely to proceed. Defendants' motion thus does not appear, "upon preliminary review, 'to be clearly meritorious and truly case dispositive,' *Feldman* [*v. Flood*, 176 F.R.D. 651, 652-53 (M.D. Fla. 1997)], rendering discovery a mere futile exercise." *Arriaga-Zacarias v. Lewis Taylor Farms*, 2008 WL 4544470 at * 2 (M.D. Ga. Oct. 10, 2008). A stay of discovery pending resolution of the motion to dismiss is therefore inappropriate. *See* Fed. R. Civ. P. 26(c).

---

[5] It also appears that Arenas has adequately alleged that defendants were deliberately indifferent to a known, substantial risk of harm (housing Tavara alone in a cell with risky "tie off" fixtures despite his known history of suicide attempts) in violation of his constitutional rights. *See, e.g., Greason v. Kemp*, 891 F.2d 829, 835-36 (11th Cir. 1990) ("Where prison personnel directly responsible for inmate care have knowledge that an inmate has attempted, or even threatened, suicide, their failure to take steps to prevent that inmate from committing suicide can amount to deliberate indifference."). To then "stand back and watch" as Tavara hanged himself (or to order that a guard do so) and wait 15 minutes after discovery to call emergency medical services, further, seems enough to survive a motion to dismiss on qualified immunity grounds. *See, e.g., Bozeman v. Orum*, 422 F.3d 1265, 1274 (2005) (denying qualified immunity because "the officers knew Haggard was unconscious and not breathing and -- for fourteen minutes -- did nothing. They did not check [his] breathing or pulse; they did not administer CPR; they did not summon medical help. Given these circumstances, we conclude that the Officers were fairly warned by our case law and that the Officers' total failure to address Haggard's medical need during the fourteen-minute period violated [his] constitutional rights, which violation should have been obvious to any objectively reasonable correctional officer."). Because any discovery on an RA claim would cover the exact same ground, however, the Court need not determine whether plaintiff's 8th Amendment claim also survives defendants' dismissal motion in order to rule on their motion to stay discovery.

The Court therefore **DENIES** defendants' motion to stay pending disposition of their dismissal motion.  Doc. 37.

**SO ORDERED**, this __3rd__ day of May, 2017.

_/s/ G.R. Smith_
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA