## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| MARIA ARENAS, Individually and in her capacity as heir of and representative of the Estate of RICHARD TAVARA, | * * * * | |
| Plaintiff, | * * | |
| v. | * * | CIVIL ACTION FILE No. 4:16-cv-00320-WTM-GRS |
| GEORGIA DEPARTMENT OF CORRECTIONS, GEORGIA CORRECTIONAL HEALTH CARE and MARK SHELBY, STANLEY WILLIAMS, and MARVIN DICKSON in their individual capacities, | * * * * * * * | |
| Defendants. | * * | |

### DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

COME NOW Georgia Department of Corrections ("GDOC"), Georgia Correctional Health Care ("GCHC"), Mark Shelby, Marvin Dickson, and Stanley Williams (collectively, "Defendants") and respectfully submit this Reply in support of their Motion to Dismiss Plaintiff's Second Amended Complaint. Defendants stand by the arguments contained in their initial brief, and submit the following Reply only to address specific arguments in Plaintiff's Response.

## I.   ARGUMENT AND CITATION OF AUTHORITY

**A.   Plaintiff has not met her burden of showing that the law was "clearly established" that Warden Williams' conduct violated the Constitution**

As explained in Defendants' initial Motion to Dismiss Plaintiff's Second Amended Complaint, the Court should find that Warden Williams' alleged maintenance of a policy that required the officers to delay in entering Tavara's cell does not violate the Constitution. (Doc. 55 at 15). However, the Court need not even reach this issue, because any such violation is not "clearly established" in this Circuit, with the result that qualified immunity applies. See, e.g., Santamorena v. Georgia Military College, 147 F.3d 1337, 1343 (11th Cir. 1998) (explaining that "it remains appropriate, and sometimes preferable, to stop at the determination that the right, if any, was not clearly established" because this advances the longstanding principle that "courts avoid reaching constitutional questions").

For qualified immunity to be surrendered, "pre-existing law must *dictate*, that is, *truly compel* (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law." Elliott v. Wilcox, 641 Fed. Appx. 893, 898 (11th Cir. 2016) (emphasis added). As the Eleventh Circuit made clear in Spivey v. Elliott, 29 F.3d 1522 (11th Cir. 1994):

> In determining whether the law is clearly established, it is important to consider facts of cases relied upon as precedent. If the facts relied upon do not "stake out a bright line," the defendants enjoy qualified immunity.

Id. at 1527 (internal citations omitted); see also Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993) ("if case law, in factual terms, has not staked out a bright line, qualified immunity *almost always protects the defendant*") (emphasis added). This is because "[p]ublic officials are not obligated to be creative or imaginative in drawing analogies from previously

decided cases." Adams v. St. Lucie County Sheriff's Dep't, 962 F.2d 1563, 1575 (11th Cir. 1992).

Here, Plaintiff has not identified any pre-existing law from the Supreme Court or Eleventh Circuit that provides a "bright line" for holding Warden Williams liable for the policy at issue. Instead, Plaintiff erroneously relies on Greason v. Kemp, 891 F.2d 829 (11th Cir. 1990)—a case that is too factually and legally inapposite to defeat qualified immunity. In Greason, the Eleventh Circuit affirmed the denial of summary judgment to the warden of a prison in which an inmate committed suicide. In that case, however, the warden knew that a different inmate had previously committed suicide at the prison due to Dr. Fodor's discontinuance of his mental health medication. 891 F.2d at 840. The warden also knew that Dr. Fodor came to the prison only once a week, and thus could not adequately treat 70-75 inmates in such a short amount of time. Id. at 839. Nevertheless, the warden did nothing to investigate the previous inmate's lack of medical treatment or to change the method of providing treatment to mentally ill inmates. Id. at 840. In short, the warden "failed to take adequate measures to cure the serious problems *of which he was aware*" and could, accordingly, be held liable for the plaintiff's subsequent suicide. Id. (emphasis added).

Thus, the "bright line" created in Greason is that wardens can be held liable for an inmate's suicide when similar previous suicides have occurred, the warden is aware of the previous suicides, and the warden does nothing to prevent similar suicides from occurring in the future. Greason, therefore, does not apply here, as Plaintiff does not allege in the Amended Complaint that, prior to Tavara's suicide, other inmates had committed suicide due to Warden Williams' alleged policy.

Plaintiff also contends in her response that the need to "immediately intervene to stop a suicide or assist an inmate . . . before it is too late" is "obvious." (Doc. 58 at 13). In so arguing, Plaintiff ignores that a legitimate safety and security concern exists regarding the need to safeguard prison officers and other inmates by making sure inmates' cells are entered only under safe conditions, and that this concern is equally obvious. In light of these competing interests—and the lack of any case law clearly establishing that one interest should prevail over another or establishing how to balance these interests—Plaintiff's claims against Warden Williams are barred by qualified immunity. In short, prison officials should be allowed to maintain policies that safeguard the safety interests of officers and other inmates without fear of liability, particularly when there is no case law clearly establishing otherwise. Carrothers v. Kelly, 312 Fed. Appx. 600 (5th Cir. 2009) ("no rule of constitutional law requires unarmed officials to endanger their own safety"); Longoria v. Texas, 473 F.3d 586, 594 (5th Cir. 2006).

**B.     Plaintiff did not provide ante litem notice for her claims that are based on events that occurred during the actual suicide.**

Plaintiff's ante litem notice did not provide Defendants with notice that she would seek to hold them liable for their response to the actual suicide. The ante litem notice explicitly states that Tavara died because he "requested medical treatment for depression and his bi-polar disorder, which treatment was denied," and he "was not given adequate medical attention for his severe mental disorder." (Doc. 52-1 at 2). Consequently, the only "act" or "omission" Plaintiff provided the State with notice of was its alleged failure to provide Tavara with mental health treatment prior to the suicide. See O.C.G.A. § 50-21-26.

The foregoing language in the ante litem notice cannot be reasonably interpreted as providing notice of Plaintiff's intent to sue for acts or omissions that occurred while the suicide

4

was in progress.  Such a holding would be tantamount to stating that, if an individual dies in a car accident, then it is acceptable for the plaintiff to provide the State with ante litem notice that it defectively designed the highway, and then *also* sue the State for its failure to properly treat the decedent's injuries once State troopers arrived on the scene.  Such a result is absurd, as the situation clearly consists of two separate sets of acts/omissions that occurred at two different points in time.  A claimant's identification of the first set of acts/omissions (i.e., the defective design of the roadway) in no way provides notice of the second set of acts/omissions (i.e., the failure to adequately respond to the accident).  The same is true here.

While Plaintiff is correct that she is only required to give notice "to the extent of [her] knowledge and belief and as may be practicable under the circumstances," it is undisputed that—during the one-year ante litem notice period—Plaintiff's counsel obtained the incident report of the suicide, which forms the basis of her claims that Defendants negligently responded/reacted to the suicide (indeed, the Second Amended Complaint contains language that is verbatim from the incident report).  Consequently, Plaintiff could have and should have given the State notice that her theory of liability would be based also upon the separate set of acts/omissions that allegedly occurred during the suicide.[1]

---

[1] At one point in her response, Plaintiff contends that because the ante litem notice references "correction officers" at the prison, DOAS had "ample opportunity to review the officers' own statements." (Doc. 58 at 26).  However, the incident report is a document that belongs to the Georgia Department of Corrections that DOAS would have had to specifically request.  Without notice that Plaintiff would be suing over the response/reaction to the suicide, DOAS would have had no reason to request the incident report.  DOAS would have instead limited its investigation to Tavara's medical records and sick call requests.

### C.     The law enforcement exception of the GTCA bars Plaintiff's tort claims that are based on the response to Tavara's suicide

As provided in Defendants' initial brief, the GTCA insulates the State from liability for "losses resulting from" "the failure to provide, or the method of providing, law enforcement, police, or fire protection" (the "law enforcement" exception).  See O.C.G.A. § 50-21-24(6). Plaintiff's contention that the law enforcement exception does not apply here is incorrect.

To support this contention, Plaintiff claims that the term "law enforcement" does not include correctional officers working in a prison, but instead encompasses only police officers who are authorized to exercise the power of arrest.  (Doc. 58 at 28-29).  There are numerous problems with Plaintiff's argument.  First and foremost, the exception does not specify the *type of actor* it applies to; hence, it applies to *anyone* (or any agency) who provides "law enforcement, police, or fire protection" services, regardless of whether they are a police officer, law enforcement officer, State employee, or citizen.  This is clear based on the Georgia Court of Appeals' analysis of a similar argument in Dep't of Human Res. v. Hutchinson, 217 Ga. App. 70 (1995), which was later followed by the Georgia Supreme Court in Youngblood v. Gwinnett Rockdale Newton Cmty. Serv. Bd., 273 Ga. 715 (2001).

In Hutchison, the Georgia Department of Human Resources ("DHR") placed a delinquent juvenile in a contract home operated by Hutchinson.  Id. at 71.  The juvenile found a loaded handgun that Hutchison kept under her mattress and used it to shoot Hutchison.  Hutchison, therefore, sued DHR for the injuries she sustained in the shooting.  DHR argued that Hutchinson's claims were barred by the "assault and battery" exception of the GTCA, which insulates the State from liability for "losses resulting from . . . assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, or interference

6

with contractual rights." See O.C.G.A. § 50-21-24(7).  In response, Hutchison argued that the "assault and battery" exception applies only if the assault and battery was committed by "a state officer or employee" and, hence, does not apply when the assault and battery is committed by a third party. Id. at 71.  The Court of Appeals readily rejected Hutchinson's argument based on the plain language of the exception.  The Court emphasized that there was no language in the "assault and battery" exception that provided "any limitation on the status of the person committing a O.C.G.A. § 50-21-24(7) tort." Id.  The Court further supported its conclusion with the fact that two other exceptions in O.C.G.A. § 50-21-24 "specifically except liability for losses resulting from certain acts by 'a state officer or employee.'" Id. at 72.  Because this specific requirement was included in two other exceptions, but omitted from the "assault and battery" exception, the Court found that "Hutchinson would have us add a limiting phrase into a subsection when the legislature, faced with a choice, did not do so." Id.  Consequently, the Court held that the "assault and battery" exception can apply "regardless of who committed" the assault and battery. Id. at 71.

     The same result should be reached here.  Although the Georgia Supreme Court's holding in Hutchinson focused on the scope of a different exception (i.e., the assault and battery exception instead of the law enforcement exception), the analysis and reasoning in Hutchinson applies with equal force to the law enforcement exception.  As with the "assault and battery" exception, there is no language in the law enforcement exception "that places any limitation on the status of the person" or agency providing the protection services.  Additionally, as in Hutchinson, the fact that the legislature included such a limitation in two other exceptions—but omitted it from the law enforcement exception "must be regarded as deliberate." Hutchinson,

217 Ga. App. at 72.  Accordingly, the law enforcement exception does not apply just to "law enforcement officers" but can also apply to correctional officers or any other individual.

Second, Plaintiff's claim that the exception applies only to certain types of law enforcement protection (i.e., protection provided by police officers) is belied by the express language of the exception.  The exception plainly applies to the provision of "***law enforcement, police***, or fire protection."  O.C.G.A. § 50-21-24(6) (emphasis added).  Since the exception applies to law enforcement protection ***and*** police protection, the phrase "law enforcement protection" must necessarily ***mean something different*** than "police protection."  Otherwise, the word "police" in the statute would be mere surplusage, which violates the statutory construction canon of *casus male inclusus*.  <u>Kungys v. United States</u>, 485 U.S. 759, 778 (1988) (Scalia, J., plurality opinion) (explaining that "a cardinal rule of statutory interpretation [is] that no provision should be construed to be entirely redundant").

### III.   CONCLUSION

For the foregoing reasons, and the reasons set forth in Defendants' initial Motion to Dismiss Plaintiff's Second Amended Complaint, Defendants request that this Court dismiss all of the claims in Plaintiff's Second Amended Complaint except for the § 1983 claims against Shelby and Dickson.

    Respectfully submitted,

| | |
|---|---|
| CHRISTOPHER M. CARR<br>Attorney General | 112505 |
| KATHLEEN M. PACIOUS<br>Deputy Attorney General | 558555 |
| LORETTA L. PINKSTON-POPE<br>Senior Assistant Attorney General | 580385 |

        ROGER CHALMERS      118720
Senior Assistant Attorney General

*/s/ Ron Boyter*
RON BOYTER      073553
Assistant Attorney General

*/s/ Ellen Cusimano*
ELLEN CUSIMANO      844964
Assistant Attorney General

Please serve:
Ellen Cusimano
Assistant Attorney General
Georgia Department of Law
40 Capitol Square, S.W.
Atlanta, GA 30334-1300
(404) 657-4355
ecusimano@law.ga.gov

## CERTIFICATE OF SERVICE

I hereby certify that I have, on this day, served the foregoing **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Brent Carter
Carter Franklin, LLP
P.O. Box 27
Metter, GA 30439

Jeff Edwards
Scott Medlock
The Edwards Law Firm
The Haehnel Building
1101 E. 11th Street
Austin, TX 78702

This 13th day of September, 2017.

/s/ Ellen Cusimano
ELLEN CUSIMANO          844964
Assistant Attorney General