IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

MARIA ARENAS, individually and      )
in her capacity as heir and          )
representative of the Estate of     )
Richard Tavara,                     )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )        CASE NO. CV416-320
                                     )
GEORGIA DEPARTMENT OF                )
CORRECTIONS, GEORGIA                 )
CORRECTIONAL HEALTH CARE, MARK       )
SHELBY, in his individual            )
capacity, STANLEY WILLIAMS, in       )
his individual capacity, and         )
MARVIN DICKSON, in his               )
individual capacity,                 )
                                     )
        Defendants.                  )
                                     )

U. S. DISTRICT COURT
Southern District of Ga.
Filed in Office

_____M
2|20 20 | P
Deputy Clerk

## O R D E R

Before the Court is Defendants' Motion to Dismiss. (Doc.
53.) For the following reasons, Defendants' motion is **GRANTED IN
PART** and **DENIED IN PART**. With respect to Plaintiff's claims
against Defendant Williams under 42 U.S.C. § 1983, Defendants'
motion is **GRANTED**. Accordingly, Plaintiff's claims for
deliberate indifference against Defendant Williams based on
having a policy of deliberate indifference to the medical needs
of inmates and failing to train his staff are **DISMISSED**. With
respect to Plaintiff's claims under the ADA and RA, Defendants'
motion is **GRANTED** to the extent that these claims are premised

on a failure to provide medical treatment. However, the motion is **DENIED** and Plaintiff's ADA and RA claims remain to the extent that these claims are premised on a failure to provide proper accommodations. With respect to Plaintiff's state law negligence claim brought against Defendant Georgia Department of *Corrections, Defendants' motion* is **GRANTED** and these claims are **DISMISSED**. However, with respect to any negligence claim brought against Defendant Georgia Correctional Health Care for a failure to provide proper medical treatment, Defendants' motion is **DENIED**.

## BACKGROUND

This case arises from the incarceration and subsequent death of Richard Tavara.[1] (Doc. 52.) On December 7, 2014, Tavara was incarcerated at Smith State Prison, operated by Defendant Georgia Department of Corrections ("GDOC"). (Id. at ¶¶ 7, 14.) At all relevant times, Defendant Stanley Williams was the warden at Smith State Prison. (Id. at ¶ 6.) At approximately 10:50 pm, Officer John Calhoun saw Tavara attempting to tie around his neck a bed sheet that was attached to a fire extinguisher sprinkler on the ceiling of his cell. (Id. at ¶ 21.) Pursuant to the prison's policy not to enter a prisoner's cell without being

---

[1] For the purposes of considering Defendants' Motion to Dismiss, this Court will accept all factual allegations in the complaint as true and construe all allegations in the light most favorable to Plaintiff. Timson v. Sampson, 518 F.3d 870, 872 (11th Cir. 2008).

accompanied by a supervisor ranked lieutenant or higher, Officer Calhoun did not immediately intervene. (Id. at ¶ 35.) Instead, he notified his supervisors, Defendants Sergeant Mark Shelby and Lieutenant Marvin Dickson, by radio. (Id. at ¶ 22.)

Defendant Shelby arrived at Tavara's cell eight minutes later and observed Tavara hanging from the fire extinguisher. (Id. at ¶ 26.) Defendant Shelby, however, took no action to intervene. (Id.) Defendant Lieutenant Dickson arrived two minutes later and eventually ordered the officers to open Tavara's cell door. (Id. at ¶¶ 28, 30.) Once inside the cell, Plaintiff contends that the officers actually increased the pressure on Tavara's neck by improperly pulling back on his body instead of lifting him up. (Id. at ¶ 30.) The officers were also unable to immediately relieve pressure from Tavara's neck because they did not have the appropriate tool to quickly cut him down from the ceiling. (Id. at ¶ 31.) In total, nearly fifteen minutes passed from the time that Officer Calhoun witnessed Tavara begin to tie the bed sheet around his neck until someone requested emergency medical assistance. (Id. at ¶ 33.) Tavara was eventually pronounced dead. (Id. at ¶ 14.)

According to Plaintiff's amended complaint, Tavara suffered from severe mental illnesses and had previously attempted to commit suicide. (Id. at ¶ 15.) Plaintiff contends that all Defendants were aware of Tavara's history of attempted suicides

and mental illnesses. (Id.) Despite this awareness, Plaintiff contends that Defendant GDOC, based on an improper recommendation from Defendant Georgia Correctional Health Care ("GCHC"), did not provide Tavara with appropriate accommodations. (Id. at ¶¶ 39, 40.) Specifically, Plaintiff contends that Defendants GDOC and GCHC improperly housed Tavara in a solitary cell that had access to a fire extinguisher sprinkler on the ceiling—a known suicide risk. (Id.) Defendant GCHC is an entity that contracts with Defendant GDOC to provide healthcare and psychiatric care to prisoners at Smith State Prison. (Id. at ¶ 8.)

On November 29, 2016, Tavara's mother, Maria Arenas, brought suit in both her individual capacity and as representative of the Estate of Richard Tavara. (Doc. 1.) In her second amended complaint, Plaintiff bought suit against Defendants Shelby, Dickson, and Williams pursuant to 42 U.S.C. § 1983. (Doc. 52.) Against Defendant Williams, Plaintiff claims that he was deliberately indifferent under 42 U.S.C. § 1983 as he (1) "maintained a policy and practice prohibiting officers from intervening to save inmates' lives without the assistance of their supervisors;" and (2) "failed to train his subordinates that they have a constitutional duty to protect inmates from suicide." (Doc. 52 at ¶¶ 48, 49.) Plaintiff also brought suit against Defendants GDOC and GCHC alleging (1) violations of the

American with Disabilities Act ("ADA") and Rehabilitation Act ("RA") as Defendants GDOC and GCHC "failed and refused to reasonably accommodate Tavara's mental disability while in custody" (Id. at ¶ 58); and (2) violations of the Georgia State Tort Claims Act "for negligence and/or intentional misconduct" in the response to Tavara's ongoing suicide attempt. (Id. at ¶ 66.)

In their motion to dismiss, Defendants contend that Plaintiff has failed to state a claim against Defendant Williams under 42 U.S.C. § 1983 based on either the prison's policy not to immediately enter inmates' cells or his alleged failure to train officers to immediately respond to ongoing suicides. Alternatively, Defendants contend that Defendant Williams is entitled to qualified immunity on these claims. Defendants also argue that all claims against Defendants GCHC and GDOC should be dismissed. In respect to claims under the ADA and RA, Defendants contend these claims should be dismissed because (1) Plaintiff has failed to show that Tavara was discriminated against because of his disability; (2) the ADA and the RA do not provide causes of actions for lack of treatment; and (3) both Defendants GCHC and GDOC are entitled to immunity on these claims. With respect to Plaintiff's state law tort claims, Defendants argue that these claims should be dismissed because Defendants GCHC and GDOC are also entitled to sovereign immunity on these claims and

Plaintiff failed to provide a sufficient notice of these claims as required by state law.

**ANALYSIS**

I.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' " Id. (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " Id. (quoting Twombly, 550 U.S. at 557) (alteration in original).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Id. (quoting Twombly, 550 U.S. at 570). For a claim to have facial plausibility, the plaintiff must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Sinaltrainal v.

Coca-Cola Co., 578 F.3d 1252, 1261 (11th Cir. 2009) (quotations omitted) (quoting Iqbal, 556 U.S. at 678). Plausibility does not require probability, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " Id. (quoting Twombly, 550 U.S. at 557). Additionally, a complaint is sufficient only if it gives "fair notice of what the . . . claim is and the grounds upon which it rests." Sinaltrainal, 578 F.3d at 1268 (quotations omitted) (quoting Twombly, 550 U.S. at 555).

When the Court considers a motion to dismiss, it accepts the well-pleaded facts in the complaint as true. Sinaltrainal, 578 F.3d 1252 at 1260. However, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678. Moreover, "unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of [plaintiff's] allegations." Sinaltrainal, 578 F.3d at 1268 (citing Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005)). That is, "[t]he rule 'does not impose a probability requirement at the pleading stage,' but instead simply calls for enough facts to raise a reasonable expectation that discovery

will reveal evidence of the necessary element." <u>Watts v. Fla.
Int'l Univ.</u>, 495 F.3d 1289, 1295-96 (11th Cir. 2007) (quoting
<u>Twombly</u>, 550 U.S. at 545).

II. <u>DELIBERATE INDIFFERENCE CLAIMS AGAINST DEFENDANT WILLIAMS</u>

In her second amended complaint, Plaintiff brought suit
against Defendant Williams pursuant to 42 U.S.C. § 1983.
Plaintiff alleges that Defendant Williams was deliberately
indifferent to Tavara's constitutional rights because he
"maintained a practice of prohibiting officers from intervening
to save inmates' lives without the assistance of their
supervisors." (Doc 52, ¶ 48.) In addition, Plaintiff alleges
that Defendant Williams "failed to train his subordinates that
they have a constitutional duty to protect inmates from suicide,
that officers must respond adequately to a suicide attempt . . .
and are required to provide timely medical attention to inmates
seen committing suicide." (<u>Id.</u> at ¶ 49.) In response, Defendants
contend that Plaintiff has failed to state a claim against
Defendant Williams based on his failure to train his staff or
the prison's policy not to enter cells while unaccompanied.
Alternatively, Defendants argue that Defendant Williams is
entitled to qualified immunity on both claims.

A. <u>Failure to Train</u>

Defendants first contend that Plaintiff has failed to state
a claim that Defendant Williams was deliberately indifferent

when he "unconstitutionally trained his subordinates . . . to delay providing emergency medical care to prisoners engaged in suicide." (Doc. 58 at 12.) Defendants contend that this claim fails because Plaintiff has provided no factual allegations in her complaint that Defendant Williams was on notice of the alleged inadequate training. After careful review, the Court agrees.

Typically, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick v. Thompson, 563 U.S. 51, 62 (2011) (quoting Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 409 (1997)). In this case, Plaintiff has not alleged any prior instances of an attempted suicide at the prison. As a result, there is no indication in the complaint that Defendant Williams was on notice that officers working in Smith State Prison were improperly trained to provide a delayed response to an ongoing suicide.

Plaintiff, however, alleges that the need for training was so obvious in this case that an allegation of prior similar incidents is unnecessary. It is true that the Supreme Court of the United States left open the possibility that a situation could exist where the likelihood of a constitutional violation was so apparent that liability for a failure-to-train claim

could attach on the basis of a single violation. City of Canton v. Harris, 489 U.S. 378, 388 (1989). In Canton, the Supreme Court hypothesized that there would be an obvious need for training if a police force was provided with deadly weapons without first being trained as to potential constitutional violations resulting from the use of deadly force. Id. at 390 n.10. In this hypothetical situation, the Supreme Court concluded that a plaintiff would have no need to allege any prior acts before bringing a failure-to-train claim. Id.

In this case, Plaintiff is challenging Defendant Williams's training of officers to delay entering cells in order to respond to an ongoing suicide. Plaintiff's failure-to-train claim is fundamentally different than the hypothesized failure-to-train claim in Canton. The Supreme Court's hypothetical in Canton involved a lack of training despite a high likelihood of a constitutional violation. Id. In this case, training was provided, but Plaintiff is challenging the adequacy of that training. In this Court's view, it is not apparent that Defendant Williams's policy to delay entering a cell while unaccompanied would necessarily lead to a constitutional violation. With no allegations of prior incidents where the officers caused harm to an inmate attempting to commit suicide, the Court finds that Defendant Williams could not have been on

notice that his training of officers to delay entering cells would likely lead to a constitutional violation.

Moreover, courts have been hesitant to employ the narrow exception created in Canton. See Brown, 520 U.S. 397, 409 (1997) (noting that the Canton Court "simply hypothesized that, in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations"); see also Young v. City of Augusta, Ga. ex rel. DeVaney, 59 F.3d 1160, 1171 (11th Cir. 1995) (finding that there was not an obvious need to train jail officials "to recognize the need to remove a mentally ill inmate to a hospital or to dispense medication as prescribed"). Because courts have been hesitant to uphold a failure-to-train claim based on single incident violations, this Court is also hesitant to find that Defendant Williams could have been deliberately different to Tavara's constitutional rights without any allegations of prior similar incidents. Without any indication that Defendant Williams was on notice that his staff was inadequately trained, the Court finds that Plaintiff's deliberate indifference claim, to the extent that it relies on a Defendant Williams's failure to train his staff, must be dismissed.

B. Policy

Although Plaintiff has failed to properly state a claim based on Defendant Williams's inadequate training of his staff to provide a timely response to ongoing suicide attempts, Plaintiff also alleges that Defendant Williams should be liable as he "maintained a practice of prohibiting officers from intervening to save inmates' lives without the assistance of their supervisors." (Doc. 52, ¶ 48.) On this claim, Defendants argue that Plaintiff's claim should be dismissed because Plaintiff cannot maintain a claim against Defendant Williams based on supervisory liability. After careful review, the Court does not agree.

In the Eleventh Circuit, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999). However, a supervisor can be liable under § 1983 "when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). A causal connection can be established when a supervisor's "custom or policy . . . result[ed] in deliberate indifference to constitutional rights." Id. (quoting

Gonzalez v. Reno, 325 F.3d 1228, 1234-35 (11th Cir. 2003) (internal citations omitted)).

In this case, Defendants contend that Defendant Williams cannot be liable pursuant to § 1983 because Plaintiff has failed to allege that he actually created any policy that led to the purported violation of Tavara's constitutional rights. The Court, however, finds that Defendants' argument is inapposite. When considering whether a supervisor could be liable for a custom or policy that results in deliberate indifference, there is no requirement that the supervisor actually created the policy. See, e.g., Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) ("An official may also be liable where a policy or custom that he established or utilized results in deliberate indifference to an inmate's constitutional rights." (emphasis added)). As such, the Court rejects Defendants' argument that Plaintiff has failed to state a claim merely because Plaintiff has not alleged that Defendant Williams created the policy at issue. The Court finds that Plaintiff has sufficiently alleged that Defendant Williams maintained the policy while acting as warden.

C. Qualified Immunity

Because the Court is not persuaded by Defendants' argument that Plaintiff's claim should be dismissed because there is no evidence that Defendant Williams created the policy at issue,

13

the Court must now consider whether Defendant Williams is entitled to qualified immunity on that claim. "Qualified immunity shields government officials acting within their discretionary authority from liability unless the officials 'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Franklin v. Curry, 738 F.3d 1246, 1249 (11th Cir. 2013) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). As such, this Court must consider whether Defendant Williams's policy violated clearly established law of which he should have been aware.

"For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right . . . .'" Hope v. Pelzer, 536 U.S. 730, 739 (2002) (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). In determining whether a right has been clearly established, this Court must consider decisions "of the Supreme Court, the Eleventh Circuit or the law of the highest court of the state where the events took place" to determine whether established case law would have put Defendant Williams on notice that his policy constituted a constitutional violation. Amnesty Int'l, USA v. Battle, 559 F.3d 1170, 1184 (11th Cir. 2009). Prior case law does not need to be "materially similar" or directly on point with the circumstances of the case presently before the Court so long as the official

is given "fair warning" that his policy constituted a constitutional violation. Hope, 526 U.S. at 741.

As a starting point, the Eleventh Circuit has provided that "an official acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening condition or an urgent medical condition that would be exacerbated by delay." Bozeman v. Orum, 422 F.3d 1265, 1273 (11th Cir. 2005) (quoting Lancaster v. Monroe Cty., Ala., 116 F.3d 1419, 1425 (11th Cir. 1995)). Although the Eleventh Circuit has never specifically held that a failure to respond to an ongoing suicide is a constitutional violation, the Court agrees that there is very little meaningful difference between responding to a medical crisis and responding to an ongoing suicide. However, this case law is still insufficient to show that Defendant Williams's policy violated clearly established law.

When considering qualified immunity, the law protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 340 (1986). While case law supports the idea that officers cannot delay in responding to an ongoing suicide attempt, there is a logical leap that is required in order to say that Defendant Williams should have known that the prison's policy violated clearly established

laws. The prison's policy did not expressly require officers to delay in responding to ongoing suicide attempts. Rather, the policy was designed to delay officers from entering cells without the presence of a supervisor of a certain rank. The Court does not find any case law establishing that a policy of this sort clearly violates the constitutional rights of inmates. Therefore, it is reasonable that Defendant Williams would not have known that his policy was a violation of clearly established law. See Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993) ("If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant."). Because Defendant Williams was not plainly incompetent in maintaining a policy preventing officers from immediately enter any inmates' cells, he is entitled to qualified immunity. Accordingly, Plaintiff's claim that Defendant Williams was deliberately indifferent by maintaining the policy at issue in this case is dismissed.

## III. ADA AND RA CLAIMS AGAINST DEFENDANTS GDOC AND GCHC

In addition, Plaintiff brought suit against Defendants GDOC and GCHC pursuant to the Americans with Disabilities Act and the Rehabilitation Act. In her complaint, Plaintiff claims that that Defendants GDOC and GCHC failed to properly accommodate Tavara as required by the ADA and RA. Specifically, Plaintiff contends that Defendants GDOC and GCHC should have accommodated

16

Tavara by providing him with mental health treatment and a cell placement that accounted for the dangers presented by his disability.[2]

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. Accordingly, to state a claim pursuant to Title II of the ADA, Plaintiff must show (1) that Tavara was a qualified individual with a disability, (2) that he was excluded from participation in or denied the benefits of a public entity's services, programs, or activities or otherwise discriminated against, and (3) that he was discriminated against by reason of his disability. Shotz v. Cates, 256 F.3d 1077, 1079 (11th Cir. 2001) (citing 42 U.S.C. § 12132).[3] The Supreme Court of the

---

[2] "Discrimination claims under the Rehabilitation Act are governed by the same standards in ADA cases . . . ." Cash v. Smith, 231 F.3d 1301, 1305 (11th Cir. 2000). As a result, this Court will discuss these claims together by focusing on the ADA. Id. at 1305 n.2 ("Cases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice-versa.").

[3] The language of the RA largely tracks that of the ADA. The RA provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794 (emphasis added). The only material difference between the RA and the ADA is the respective causation requirements in each statute. However, courts have found that

United States has found that state prisons are a public entity subject to Title II of the ADA. Bircoll v. Miami-Dade Cty., 480 F.3d 1072, 1081 (11th Cir. 2007) (citing Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 211 (1998)).

In this case, Defendants do not contest whether Tavara had a qualifying mental health disorder under the ADA. However, Defendants make several arguments as to why Plaintiff has failed to state a claim based on either the ADA or RA. Defendants contend that Plaintiff's claim fails because (1) Plaintiff cannot show that Tavara was denied any benefit by reason of his disability; (2) any claim based on inadequate medical treatment is incognizable under the ADA and RA; and (3) both Defendants GCHC and GDOC are entitled to sovereign immunity on these claims.

First, Defendants contend that Plaintiff is unable to show that Tavara was discriminated against "by reason of [his] disability" as required by 42 U.S.C. § 12132. In Defendants' view, Tavara was provided with the same treatment as every other inmate and, as a result, cannot show that he was discriminated against because of his disability. Defendants' argument,

---

this difference "was immaterial where the plaintiffs' claims were based on a failure to make reasonable accommodations for disabled individuals." Gaylor v. Ga. Dep't of Nat. Res., No. 2:11-CV-288, 2013 WL 4790158, at *3 (N.D. Ga. Sept. 6, 2013)(citing Bennet-Nelson v. La. Bd. of Regents, 431 F.3d 448, 454 (5th Cir. 2005)).

however, fundamentally misunderstands the requirements of both the ADA and RA.

To maintain a claim under the ADA and RA, Plaintiff is not required to allege that Defendants treated Tavara differently from other inmates because of his disability.[4] Rather, the ADA and RA require that this Court consider whether Tavara was unable to access services or benefits by reason of his disability. See Tennessee v. Lane, 541 U.S. 509, 548-49 (2004). When an individual is unable to access services or benefits because of their disability, the ADA and RA require that the entity provides sufficient accommodations to ensure that the individual is permitted access to the same benefits and services as others. See, e.g., Wolfe v. Fla. Dep't. of Corr., 5:10-cv-663, 2012 WL 4052334, at *5 (N.D. Fla. Sept. 14, 2012) (finding that the Florida Department of Corrections was "deliberately

---

[4] The Court acknowledges that Defendants have cited authority for the proposition that Plaintiff must be able to show that Tavara was treated differently from other inmates because of his disability. See, e.g., Bearden v. McKeithen, 5:11-cv-316, 2012 WL 3938255, at *6 (denying an ADA claim based on a failure to show that the decedent was treated differently than other inmates"); Stiles v. Judes, 8:12-cv-02375, 2013 U.S. Dist. LEXIS 124487, at *27 (M.D. Fla. Aug. 30, 2013) (finding that there was no basis for an ADA claim where the plaintiff was unable to allege that the jail's decision to place the inmate in restraints or isolation was because of his disability). However, none of these cases are controlling on this Court. To the extent that those cases hold that Tavara had to be treated differently than other inmates because of his disability, this Court does not agree.

indifferent to Plaintiff's need for a reasonable accommodation, both through their actions and their policies").[5]

In her complaint, Plaintiff has alleged that the severity of Tavara's disability limited his ability to access certain benefits and services offered at Smith State Prison,

---

[5] Defendants also contend that neither Title II of the ADA nor the RA require accommodations. In support of their position, Defendants cite that neither of these statutes expressly mention accommodations, while both Title I and Title III of the ADA contain a definition of discrimination that includes "making reasonable accommodations." Compare 42 U.S.C. § 12131, and 29 U.S.C. § 794, with 42 U.S.C. § 12112(b)(5)(A), and 42 U.S.C. § 12182(b)(2)(A)(ii). As a result, Defendants contend that "Plaintiff cannot use Title II to complain of an alleged failure to accommodate or modify." (Doc. 53 at 12.) Defendants concede that certain administrative regulations under Title II require accommodations. (Id.) However, Defendants argue that these regulations are invalid as they exceed the rights created under the statute. In Bircoll, the Eleventh Circuit left open the question of whether regulations requiring reasonable accommodations exceeded the scope of Title II. 480 F.3d at 1082 n.1. However, this Court finds that both the statutory language of the ADA and the weight of authority supports the finding that regulations requiring accommodations under the ADA are not outside the grant of statutory authority.
   As a starting point, Title II provides protections for a "qualified individual with a disability." 42 U.S.C. § 12132. The ADA defines a qualified individual with a disability as an "individual with a disability who, with or without reasonable modifications . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Moreover, other courts have recognized "Title II's affirmative obligation to accommodate." Lane, 541 U.S. at 512; see also Frame v. City of Arlington, 657 F.3d 215, 223 (5th Cir. 2011); Gaylor v. Ga. Dept. of Nat. Res., 2:11-cv-288, 2013 WL 4790158, at *5 (N.D. Ga. Sept. 6, 2013). As a result, the Court rejects Defendants' argument that regulations requiring accommodations are outside of the statutory grant in Title II.

specifically access to safe housing.[6] Accordingly, Plaintiff contends that Defendants should have provided Tavara with proper accommodations, which would have allowed Tavara to access those benefits and services at the jail like all other inmates. In Plaintiff's view these accommodations would have included different cell placement and mental health treatment. Because Tavara was not provided with these accommodations and, therefore, remained unable to access certain benefits and services, Plaintiff has properly stated a claim that Tavara was denied access by reason of his disability as required by the ADA and RA.[7]

Next, Defendants contend that Plaintiff has failed to state a claim for which relief can be granted because a claim under the ADA and RA cannot be based on an allegation that Defendants GDOC and GCHC provided inadequate treatment of Tavara's disability. It is true that neither the ADA nor RA can be used as a means to pursue medical malpractice claims. See Schiavo ex

---

[6] Plaintiff contends that Tavara was denied the benefit and service of safe housing due to his disability. Defendants do not challenge Plaintiff's contention that safe housing is a benefit or service that qualifies under the ADA and RA. Accordingly, the Court accepts Plaintiff's allegation as sufficient when ruling on this motion.

[7] Defendants also argue that, at the very least, these claims should fail under the RA because the causation in the RA is more rigorous than the standard in the ADA. See supra p. 17 n.3. As previously noted, however, courts have found that any difference in the causation requirements are immaterial when plaintiffs are alleging a claim based on a failure to provide proper accommodations.

21

rel. Schindler v. Schiavo, 403 F.3d 1289, 1294 (11th Cir. 2005) (relying on Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) for the proposition that the ADA is not violated simply by a prison's failure to attend to the medical needs of a disabled person); see also Fitzgerald v. Corr. Corp. of Am., 403 F.3d 1134, 1144 (10th Cir. 2005) (concluding that "neither the ADA nor the Rehabilitation Act provide remedies for alleged medical negligence").

In her complaint, Plaintiff claims that Tavara was not provided with adequate medical care before or during his suicide attempt, but concedes that the ADA and RA were not designed to support claims of medical malpractice. However, Plaintiff alleges that this case is different because she is alleging that Tavara was completely denied access to medical care. As such, she alleges that medical access is just another accommodation that Tavara was not provided. The Court, however, cannot agree. Plaintiff's claim that Tavara was provided with inadequate medical care when he was not treated for his mental illnesses is the exact type of claim that is impermissible under the ADA and RA. Neither the ADA nor RA were designed to consider the adequacy of medical treatment for a disability. As a result, these claims fail to the extent they are premised on the inadequate treatment of Tavara's disability.

However, the Court notes that Plaintiff also maintains a claim under the ADA and RA that Tavara's disability was not properly accommodated by placing him in an appropriate cell. A claim that Tavara was not provided with a reasonable housing accommodation in light of his disability is materially different from any claim that he was provided with inadequate medical treatment. As such, to the extent that Plaintiff's claim is premised on the failure to provide certain accommodations related to Tavara's disability, such as an appropriate cell assignment, then this claim survives.

Finally, Defendant contends that Plaintiff's claims must be dismissed because Defendants GDOC and GCHC are entitled to immunity with respect to claims brought under the ADA and RA.[8] Defendants contend that the ADA and RA only provide a limited waiver of the state's immunity when there is conduct that violates the Constitution. Because Plaintiff has not alleged a constitutional violation by either Defendants GDOC or GCHC, Defendants argue that immunity bars Plaintiff's claims brought under the ADA and RA.

---

[8] Plaintiff alleges in her brief that Defendants waived any right to claim immunity because Defendant elected to remove this case to this Court. The record does not reflect that this case was ever removed. Rather, the record shows that Plaintiff filed suit in this Court. (Doc. 1.) While the Court cannot discern whether this is simply an error by Plaintiff's attorney or an attempt to mislead the Court, this argument is rejected.

Defendants' argument, however, is unconvincing. In fact, Defendants' argument borders upon a frivolous attempt to mislead this Court into error. First, it is well settled that entities waive their right to claim immunity for claims brought pursuant to the RA by accepting federal funds. Garrett v. Univ. of Ala. at Birmingham Bd. of Trustees, 344 F.3d 1288, 1293 (11th Cir. 2003). In this case, Plaintiff has plainly alleged in her complaint that both Defendants GDOC and GCHC have accepted federal funds. (Doc. 52, ¶¶ 7, 8.) As such, Defendants are not entitled to immunity for any claims brought pursuant to the RA.

With respect to the ADA claims, courts have found that when there is an existing claim under the RA for a failure to accommodate, courts need not consider whether Title II of the ADA abrogates the state's immunity to suit. See Gaylor v. Ga. Dep't of Nat. Res., 2:11-cv-288, 2013 WL 4790158, at *3 (N.D. Ga. Sept. 6, 2013) (finding that as long as a plaintiff maintained a claim pursuant to section 504 of the RA, there was no need to consider the issue of abrogation under Title II of the ADA). In making this determination, courts reason that there is no material difference between RA and ADA claims for a failure to accommodate. Id.; Bennet-Nelson v. La. Bd. of Regents, 431 F.3d 448, 455 (5th Cir. 2005) ("[H]aving already held that sovereign immunity does not bar the appellants' claim under [the RA], we need not address at this juncture the issue

24

of abrogation under Title II of the ADA, because the rights and *remedies under either are the same for purposes of this case.").* Because Defendants GDOC and GCHC have waived immunity under the RA, this Court finds that neither Defendant is entitled to immunity on claims under either the ADA or RA.

IV. STATE LAW TORT CLAIMS AGAINST DEFENDANTS GDOC AND GCHC

Finally, Plaintiff brought suit against Defendants GDOC and GCHC alleging various acts of negligence pursuant to state tort law. In their motion for summary judgment, Defendants contend that any state tort law claim should be dismissed because (1) sovereign immunity protects both Defendants GDOC and GCHC from suit; and (2) Plaintiff's ante litem notice was deficient. After careful consideration, the Court can only partially agree.

A. Sovereign Immunity

Defendants first contend that Plaintiff is unable to maintain a tort claim against Defendants GDOC and GCHC because those entities are entitled to sovereign immunity. Generally, the state and its entities are protected from suit by sovereign immunity. Ga. Const. art. I, § II, ¶ IX(e). In 1992, however, the General Assembly passed the Georgia Tort Claims Act ("GTCA") as a limited waiver of the state's sovereign immunity for various tort claims. O.C.G.A. § 50-21-20. Within the GTCA, the *General Assembly* provided thirteen exceptions that limit when the waiver of sovereign immunity applies. O.C.G.A. § 50-21-24.

In this case, Defendants contend that the cited negligence in this case falls under the "law enforcement exception" to GTCA's limited waiver of sovereign immunity. Under this exception, the state is protected from suit related to "the failure to provide, or the method of providing, law enforcement, police, or fire protection." O.C.G.A § 50-21-24(6). Defendants argue that the correctional officers in this case were performing law enforcement functions when responding to Tavara's suicide. As a result, Defendants argue that Plaintiff's claim is barred by the exception to the state's waiver of liability. After careful consideration, the Court does not agree that the actions that make the basis of Plaintiff's tort claim are law enforcement activities.

As a starting point, O.C.G.A § 50-21-24(6) does not provide any guidance as to whether acting as a correctional officer qualifies as providing law enforcement. In addition, there appears to be no Georgia case law to support the proposition that claims against correctional officers are barred under that law enforcement exception to the waiver of the state's sovereign immunity. However, at least one Georgia case, although not specifically discussing the law enforcement exception, has allowed a tort claim for conversion against a correctional officer. See Romano v. Ga. Dep't of Corr., 303 Ga. App. 347, 350, 693 S.E.2d 521, 525 (2010) (stating that "[f]rom the face

of the complaint, [the court could not] conclude that an exception to the GTCA's waiver of sovereign immunity applies").

In addition, the Court finds no support for the proposition that correctional officers typically perform law enforcement duties. Pursuant to O.C.G.A. § 42-2-11, the Department of Corrections is tasked with adopting rules that govern "the *assignment, housing, working,* feeding, clothing, treatment, discipline, rehabilitation, training, and hospitalization of all inmates coming under its custody." While these tasks are reflective of the role of a traditional corrections officer, these tasks are not typical law enforcement functions. As a result, this Court cannot find that the law enforcement exception to the state's limited waiver of liability in the GTCA applies in this case. Accordingly, Defendants GDOC and GCHC are not entitled to sovereign immunity on Plaintiff's state law tort claims.

B. Ante Litem Notice

Next, Defendants contend that Plaintiff's state law tort claims should be dismissed because Plaintiff's ante litem notice was deficient. Pursuant to O.C.G.A § 50-21-26, a party with a potential tort claim against the state must provide the state with notice prior to filing suit. This notice must be mailed to the Risk Management Division of the Department of Administrative Services and "the state government entity, the act or omissions

27

of which [entity] are asserted as the basis of the claim."
O.C.G.A. § 50-21-26(2). The notice must provide:

> (A) The name of the state government entity, the acts
> or omissions of which are asserted as the basis of the
> claim; (B) The time of the transaction or occurrence
> out of which the loss arose; (C) The place of the
> transaction or occurrence; (D) The nature of the loss
> suffered; (E) The amount of the loss claimed; and (F)
> The acts or omissions which caused the loss.

O.C.G.A. § 50-21-26(5). In assessing the sufficiency of an ante
litem notice, "[s]trict compliance with O.C.G.A. § 50-21-26(a)
is required." Kim v. Dep't of Transp., 235 Ga. App. 480, 481,
510 S.E.2d 50, 52 (1998).

In this case, Defendant contends that the state tort claims
against both Defendants GCHC and GDOC must be dismissed because
Plaintiff failed to comply with the notice requirements as
detailed in O.C.G.A. § 50-21-26 in two ways. First, Defendants
argue that Plaintiff's ante litem notice was deficient with
respect to Defendant GCHC because Plaintiff failed to identify
GCHC as a potential defendant in her ante litem notice and
subsequently failed to mail that notice to Defendant GCHC. With
respect to Defendant GDOC, Defendants contend that Plaintiff's
notice was deficient because it failed to properly notify
Defendant GDOC of any claims based on the negligence of its
officers. After careful review, the Court finds that the ante
litem notice was only deficient with respect to Defendant GDOC.

First, Defendants argue that the ante litem notice in this case was deficient with respect to Defendant GCHC because it was not mailed to Defendant GCHC and did not identify Defendant GCHC as a possible defendant. It is true that a failure to identify an appropriate defendant and send a copy of the ante litem notice to that defendant may be fatal to a plaintiff's claim. See Camp v. Coweta Cty., 271 Ga. App. 349, 354-55, 609 S.E.2d 695, 700 (2005). At the same time, however, the Georgia Supreme Court has found that the ante litem requirements should not be interpreted using a "hyper-technical construction" of the statute. Cummings v. Ga. Dep't of Juvenile Justice, 282 Ga. 822, 824, 653 S.E.2d 729, 732 (2007).

In Cummings, a plaintiff improperly sent a copy of an ante litem notice to the Georgia Department of Transportation instead of the actually responsible agency, the Georgia Department of Juvenile Justice. Id. at 822, 653 S.E.2d at 730-31. The court held that the notice was sufficient because the plaintiff had incomplete knowledge of the events giving rise to her complaint and, therefore, appropriately attempted to notify the correct agency. Id. at 732, 653 S.E.2d at 825 ("[T]he plain language requires notice to the agency asserted to be, rather than the agency that actually is, responsible."). In determining that the ante litem notice was sufficient, the court relied on the fact that there was no prejudice to the Department of Juvenile

Justice based on the plaintiff's inaccurate notice. Id. at 827, 653 S.E.2d at 734. Moreover, the court concluded that because the Risk Management Division was appropriately notified and this agency was the primary entity tasked with handling GTCA claims, the state had a sufficient opportunity to investigate and settle the plaintiff's claim. Id. at 826-27, 653 S.E.2d at 733.

In this case, Plaintiff notified both the Risk Management Division and Defendant GDOC of her intent to bring suit. It was not until later that Plaintiff further learned that Defendant GCHC would be an appropriate party to join as a defendant. Accordingly, the Court finds that Plaintiff sufficiently complied with the requirements to provide an ante litem notice in accordance with O.C.G.A. § 50-21-26. Additionally, Defendants have offered no argument that Defendant GCHC has suffered any specific prejudice by the lack of notice. Because the Risk Management Division was properly notified and Plaintiff asserted the agencies that she believed to be responsible in her initial notice, the Court finds that her ante litem notice was not deficient due to her failure to specifically list Defendant GCHC or mail the notice to that agency. As a result, Defendants' request that this Court dismiss Plaintiff's state law tort claims against Defendant GCHC is denied.

Next, Defendants contend that the ante litem notice was deficient as to Defendant GDOC because it did not properly put

that agency *on notice* of the alleged state law claims based on negligence. As discussed above, an ante litem notice must put the state on notice of "the acts or omissions which caused the loss." O.C.G.A. § 50-21-26. In this case, Plaintiff's ante litem notice discusses that Tavara "was not given adequate medical attention for his severe mental disorder" and this denial constituted a "deliberate indifference to serious medical needs" in violation of the Constitution. (Doc. 52, Attach. 1.) Further, Plaintiff cited "a lack of training and lack of policies and procedures towards the protection of inmates from inmate self-inflicted injuries." (Id.) Defendants argue that nothing in the ante litem would have put Defendant GDOC on notice that Plaintiff had a claim based on GDOC's or the officers' negligence in reacting and responding to Tavara's suicide.

As a starting point, "[t]he ante litem notice requirements serve the purpose of 'ensur[ing] that the state receives adequate notice of the claim to facilitate settlement before the filing of a lawsuit.' " Dorn v. Ga. Dep't of Behavioral Health & Developmental Disabilities, 329 Ga. App. 384, 385, 765 S.E.2d 385, 387 (2014) (quoting Williams v. Ga. Dep't of Human Res., 272 Ga. 624, 625, 532 S.E.2d 401, 403 (2000). With this goal in mind, the Court finds that the ante litem notice was insufficient to put the state on notice of potential negligence claims in the response to Tavara's death. Nothing in the notice

would have alerted Defendant GDOC that Plaintiff would have a claim based on the negligence of the individual officers that responded to Tavara's suicide. As a result, Plaintiff's state law claim based on GDOC's negligence in responding to Tavara's suicide is dismissed.[9]

## CONCLUSION

For the foregoing reasons, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**. With respect to Plaintiff's claims against Defendant Williams under 42 U.S.C. § 1983, Defendants' motion is **GRANTED**. Accordingly, Plaintiff's claims for deliberate indifference against Defendant Williams based on having a policy of deliberate indifference to the medical needs of inmates and failing to train his staff are **DISMISSED**. With respect to Plaintiff's claims under the ADA and RA, Defendants' motion is **GRANTED** to the extent that these claims are premised on a failure to provide medical treatment. However, to the extent that the claims under the ADA and RA are based on a

---

[9] Although not entirely clear from the amended complaint, the basis of the negligence claim against Defendant GCHC seems to be premised on a failure to provide Tavara with mental health treatment prior to his death. (Doc. 52 at 14.) As the ante litem expressly referenced claims arising from the failure to provide medical care prior to his suicide, this claim cannot be dismissed for a lack of notice. (Doc. 52, Attach. 1.) However, to the extent that any claim is brought against Defendant GCHC based on the negligence of various responders to Tavara's ongoing suicide this claim must be dismissed. As discussed, there was no notice provided in the ante litem notice that Plaintiff maintained a claim based on the negligence of the individual officers in responding to Tavara's ongoing suicide.

failure to provide proper accommodations, Defendants' motion is **DENIED** and these claims remain. With respect to Plaintiff's state law claims based on Defendant GDOC's negligence, Defendants' motion is **GRANTED** and these claims are **DISMISSED.** However, with respect to any negligence claim brought against Defendant GCHC for a failure to provide Tavara with treatment prior to his death, Defendants' motion is **DENIED.**

At the conclusion of this order, Plaintiff is left with few surviving claims. Plaintiff's claims against Defendants Shelby and Dickson for deliberate indifference remain. In addition, Plaintiff's claim against Defendants GDOC and GCHC under the ADA and the RA based on a failure to accommodate Tavara's disability remain. Finally, Plaintiff's claim against Defendant GCHC for the entity's allege negligence in failing to provide Tavara with mental health treatment services prior to his death survives.

SO ORDERED this **20**th day of February 2018.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA