# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

MARIA ARENAS,      )
          )
    Plaintiff,    )
          )
v.          )
          )      CV416-320
GEORGIA DEPARTMENT OF    )
CORRECTIONS, *et al.*,    )
          )
    Defendants.    )

## ORDER

In December 2014, plaintiff Maria Arenas' son Richard Tavara hung himself in his administrative isolation cell at Smith State Prison. Several officers eventually responded, but Tavara died. The Georgia Department of Corrections (GDOC) conducted an investigation, and plaintiff filed several lawsuits in state and federal courts, seeking in discovery, among other things, "any audio or video recordings of Richard Tavara." Doc. 76-4 at No. 8. Defendant GDOC, having produced three videos (a video from Tavara's dormitory on the date of his suicide and videos from handheld cameras held by officers responding to his suicide), represented in its discovery responses that it had produced all video recordings it had in its possession. Doc. 76-5 at No. 8.

During plaintiff's September 2018 Rule 30(b)(6) deposition of Dr. Javel Jackson, however, the witness produced for the first time a "records review" that referenced a "video from [CERT Officer] Santiago's vest showing [Tavara] with drawn up muscles" the day *before* he committed suicide, when CERT officers moved him to the administrative isolation cell.  Doc. 81-2 at 5 (Deposition of Dr. Javel Jackson at 12 (explaining that she had "just put [her] hand on [the records review] today.")).  The records review is unsigned and undated, and despite defendants' most diligent efforts, both the author and the referenced bodycamera footage are yet to be found.  Indeed, defendants have been unable to confirm the video exists at all, or ever did.  Doc. 88 at 4; *see id.*, Exh. 2 (affidavit of Kevin Sprayberry, Deputy Warden of Security at the time of Tavara's suicide, attesting that while CERT officers were equipped with body cameras he did not recall whether the video existed, much less providing a copy of the Santiago bodycamera video to a reviewer); doc. 89-1 (affidavit of GDOC investigator John Moore, representing that he was unaware of any bodycamera footage from Santiago and that he had obtained and preserved the only videos he knew existed during the course of his investigation).  The GDOC represents

2

that the report was not created as part of its internal investigation and its origin and author are still unknown, despite multiple, serious attempts to ferret out its source. Doc. 88 at 4; *see also* doc. 81 at 2-4.

The Court denied plaintiff's motion to compel the GDOC to produce the video (doc. 76), explaining that it could not issue an advisory order on a hypothetical video. Doc. 83 at 4. Plaintiff now seeks an adverse inference instruction to "cure" the unfair prejudice she has suffered because of the lost video evidence. Doc. 85. She argues that the Santiago video, allegedly taken the day before Tavara's suicide when the medical team responded to his cell, is crucial to her argument that Nurse Paulk (who also saw Tavara the day before he killed himself) should not have permitted him to be celled alone in administrative isolation. After all, Tavara had ingested unknown pills and was, according to the description of the video in the records review, "presenting with drawn up muscles." If that description is accurate, plaintiff argues, it contradicts Nurse Paulk's own description of his condition and thus, plaintiff reasons, undermines Nurse Paulk's credibility about why she declined to consider Tavara a suicide risk. Doc. 85 at 7-8. Plaintiff therefore asks the Court to instruct the jury that "if [it] find[s] the loss or destruction of evidence

3

by the Defendants was intentional, then [it] may permissibly infer that such evidence was unfavorable to Defendants." *Id*. at 14.

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Brown v. Chertoff*, 563 F. Supp. 2d 1372, 1377 (S.D. Ga. 2008). The Court has "broad discretion" to impose sanctions as part of its "inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases." *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). Spoliation sanctions may include dismissal, exclusion of testimony, or an instruction to the jury to presume that the evidence would have been unfavorable to the spoliator. *Id*. The Court examines "the extent of the prejudice caused by the spoliation (based on the importance of the evidence to the case), whether that prejudice can be cured, and the culpability of the spoliator." *Oil Equip. Co. v. Modern Welding Co.*, 661 F. App'x 646, 652 (11th Cir. 2016).

This all, of course, presupposes that the evidence existed at one time. The Court here is presented with an odd case. As noted in the Court's order denying plaintiff's motion to compel, defendants do not

dispute the value and relevance of the Santiago bodycamera footage — if it exists or ever existed. Everyone agrees that if this video existed, it ought to have been preserved and produced. But the only evidence it existed is a records review of unknown provenance and authenticity. *See* doc. 85-3. It certainly appears like something only a GDOC employee in the know could have authored, given that it referenced the contents of Tavara's outgoing mail, his mental health and criminal history, the detailed timeline of his final hours, interviews with his fellow inmates, CERT Santiago, and Deputy Warden Sprayberry, and was eventually found in a GDOC file (*id.*; *see also* doc. 81-2 at 5), but defendants have sworn under penalty of perjury that they cannot find the author despite exhaustive hunting. Doc. 88 at 4. Aside from this single mention in the unauthenticated records review, everyone agrees that no other evidence of the video's existence has been found.

Plaintiff, as the party seeking spoliation sanctions, must prove that (1) the missing evidence existed at one time; (2) defendants had a duty to preserve the evidence; and (3) the evidence was crucial to plaintiff being able to prove her *prima facie* case. *See e.g., Stanfill v. Talton*, 851 F. Supp. 2d 1346, 1362 (M.D. Ga. 2012); *In re Delta/AirTran Baggage Fee*

*Antitrust Litig.*, 770 F. Supp. 2d 1299, 1305 (N.D. Ga. 2011). Here, though there is no dispute that if it did exist defendants had a duty to preserve it and that plaintiff sent out a litigation hold notice reminding them of that duty, it still is not clear that the Santiago bodycamera video actually existed. Based on the evidence adduced thus far — a single, unauthenticated records review of unknown origin unsupported by any deposed witness statement, affidavit, or authenticated record — the Court can make no factual finding of its existence. In other words, all the Court has to go on is Arenas' speculation that the video existed but was spoliated. That is far from enough to impose sanctions. *In re Delta*, 770 F. Supp. 2d at 1309.

It bears emphasizing that, far from being a "smoking gun" indicating that defendants affirmatively destroyed crucial evidence, the records review is unsigned and undated and only makes a single reference to a video whose existence is otherwise unsubstantiated by *anyyone* who might have seen it. *See* doc. 81 at 3 (Santiago stated he had never seen any such video but could not attest that it never existed) & doc. 88 at 4 (representing that Santiago will provide an affidavit attesting that he had no knowledge of the existence any video); *id.*, Exh. 2 (former

deputy warden Sprayberry's affidavit attesting that he does not recall the existence of such a video); doc. 89-1 (investigator Moore's affidavit attesting that he was not aware of, and thus never searched for, Santiago's alleged bodycamera video during his investigation). The mysterious records review simply cannot be relied upon to prove the contents of a video that may have never existed, much less demonstrate that those hypothetical contents are "critical" or "crucial" evidence *or* that defendants intentionally destroyed the video. *See In re Delta*, 770 F. Supp. at 1310.

Even assuming that the video did exist, however, the Court remains unclear about precisely what plaintiff hoped to prove with it. The records review describes Tavara as having "drawn up muscles" in the Santiago bodycamera footage from the day before his suicide. Doc. 85-3 at 3 (noting that the video confirmed Santiago's own description of Tavara's presentation as "clearly locked up and in pain" from a "headache" and "cramped muscles"). As defendants note, this does not actually undermine Nurse Paulk's testimony that Tavara was "contracting his extremities," or necessarily contradict her testimony that his extremities were "flopping around about the place." Doc. 88 at 8 n. 3. Plaintiff has

not indicated how the mere fact that Tavara's muscle tone and position were *abnormal* and indicative of clear distress is better proven by the hypothetical video, or how its absence eviscerates plaintiff's theory that this abnormal muscle tone or position should have clued GDOC staff into his medical need. She simply concludes that, because the video is missing, it must be critical or crucial to her case — she does not show that it is either. Doc. 85 at 7-8. Conclusions, of course, are not enough. *See Point Blank Solutions, Inc. v. Toyobo Am., Inc.*, 2011 WL 1456029 at *27 (S.D. Fla. Apr. 5, 2011) (if the plaintiff "cannot show that it is 'sufficiently impaired in [its] ability to prove its case,' then it cannot show 'entitlement to an adverse inference based on any destruction of [documents]'") (cite omitted), cited in *Davison v. Nicolou*, 2017 WL 3726712 at *4 (S.D. Ga. Aug. 29, 2017) (adverse jury instructions are inappropriate where "[p]laintiff has not shown that she is prejudiced to the extent that she is unable to prove her case.").

Moreover, the mere absence of the video (the existence of which is far from established) does not prove that defendants acted in bad faith. "The touchstone in evaluating a party's preservation efforts is the party's good faith and reasonableness." *In re Delta*, 770 F. Supp. at 1312 (citing

*Miller v. Holzmann*, 2007 WL 172327 at *6 (D.D.C. Jan. 17, 2007) (adopting Sedona conference principle of "reasonable and good faith efforts to retain information"); *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 613 (S.D. Tex. 2010) ("Whether preservation or discovery conduct is acceptable in a case depends on what is reasonable, and that in turn depends on whether what was done — or not done — was proportional to that case and consistent with clearly established applicable standards.")). While plaintiff concludes that defendants must have destroyed the video of Tavara's condition the day before he killed himself (doc. 85 at 13-14) the Court is not so convinced. After all, it must be remembered, the GDOC preserved and produced several videos of the moments immediately surrounding his *suicide* as part of its internal investigation and readily admits that, had it found the Santiago video, it too would have (and should have) been produced.

Again, the video may not have ever existed, which means defendants could not have spoliated it. And even if it did exist, there is nothing before the Court indicating that defendants intentionally destroyed, erased, or taped over it to hide the contents aside from plaintiff's own speculation. Investigator Moore conceded that any video

*may* have been taped over per routine GDOC retention policy because he did not realized it existed during his investigation. Doc. 89-1. But that possibility alone does not prove bad faith. "[W]ithout some evidence that [defendants'] delay was intentional, [their] failure to act more quickly [to locate the missing material] does not prove bad faith." *In re Delta*, 770 F. Supp. 2d at 1313. At best, defendants' investigator's failure to turn up the Santiago bodycamera footage from the day before Tavara's death might constitute negligence, which is insufficient to support sanctions under the law of this circuit. *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997) ("mere negligence in losing or destroying the records is not enough for an adverse inference, as it does not sustain an inference of consciousness of a weak case.") (internal quotes, cites, and alteration omitted); *In re Delta*, 770 F. Supp. 2d at 1314 (while "malice" is not necessary to a finding of bad faith, more than negligence is required). Absent a finding of bad faith, of course, a request for spoliation sanctions is dead on arrival. *See, e.g., Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009); *Cox v. Target Corp.*, 351 F. App'x 381, 383-84 (11th Cir. 2009); *Slattery v. Precision Response Corp.*, 167 F. App'x 139, 141 (11th Cir. 2006).

In sum, plaintiff has not proven that the video existed, that its contents were either critical or crucial to her *prima facie* case, or that defendants acted in bad faith. Her motion for spoliation sanctions and an adverse jury instruction (doc. 85) is therefore **DENIED**. However, the Court's ruling does not necessarily foreclose the possibility that plaintiff may introduce evidence and argue regarding the GDOC's failure to retain the Santiago bodycamera video at trial. There too it will be her burden to prove that the video existed, and allow the jury to reach its own conclusion about the contents and weight of that video and its alleged destruction.

**SO ORDERED,** this __11th__ day of April, 2019.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA